■ AMERICAN NASSAU BUILDING SYSTEMS, LTD., Appellant, v DONALD PRESS et al., Constituting the Zoning Board of Appeals of the City of Long Beach, Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the City of Long Beach, dated April 23, 1987, which denied the petitioner's application for a variance, the petitioner appeals from a judgment of the Supreme Court, Nassau County (Roberto, J.), dated August 19, 1987, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law with costs, the petition is granted, the respondents' determination is annulled, and the petitioner's application for a variance is granted.

The petitioner, American Nassau Building Systems, Ltd. (hereinafter ANB), is the contract vendee of an undeveloped parcel of land located ⱥt the northeasterly end of a private roadway known alternatively as Nappi Drive, Nappi Place and East Bay Drive, in the City of Long Beach. On this parcel ANB proposes to build two wood-frame single-family homes, in full compliance with local zoning laws. The parcel is bounded on the north by Reynolds Channel, and on the east by another waterway known as Sarazen Canal.

The subject property fronts on Nappi Drive, which is approximately 150 feet long and 44 feet wide at its eastern boundary, where ANB's property is located, and 33 feet wide at its western boundary. At its western extremity Nappi Drive crosses Neptune Boulevard, a public street. Nappi Drive is a paved roadway, which has had the benefit of all municipal

utilities, including water, sewers, lighting, garbage collection, snow removal, and police and fire protection for 15 to 25 years. Five single-family homes have been built on the drive since the original partition of the property some 25 years ago. All of the parcels fronting on Nappi Drive, including the plot sought to be developed by ANB, enjoy perpetual easements running with the land over the private roadway.

When the Building Commissioner of the City of Long Beach declined to approve ANB's application for a building permit on the ground that no mapped street gives access to the proposed structures, invoking General City Law § 36 (1), ANB appealed to the Zoning Board of Appeals of the City of Long Beach (hereinafter Zoning Board), seeking a variance on the grounds of practical difficulty and unnecessary hardship. Following a hearing on March 26, 1987, at which the current residents of Nappi Drive and other neighbors testified that they considered the proposed structures to constitute a hazard to the health, welfare and safety of the community, the Zoning Board denied ANB's application. Thereafter ANB commenced this proceeding pursuant to CPLR 7803 (4), requesting that the court declare Nappi Drive to be a public street by prescription or implication, or else to find that ANB enjoyed reasonable access to a mapped street sufficient to satisfy the requirements of General City Law § 36 (1). The Supreme Court dismissed the petition, declaring that the determination of the Zoning Board had had a rational basis and was supported by substantial evidence.

We disagree.

Section 254 of the Charter of the City of Long Beach provides: "All special and general laws applicable to the village of Long Beach not inconsistent herewith shall remain applicable to the city of Long Beach as though the same were incorporated specifically in this charter."

According to the terms of Village Law § 6-626, with which no provision of the City Charter is inconsistent: "[a]ll lands within the village which have been used by the public as a street for ten years or more continuously, shall be a street with the same force and effect as if it had been duly laid out and recorded as such." While Nappi Drive is a dead end, and in consequence has not been as busy as a thoroughfare, there is no evidence to suggest that "the public did not have access or was ever barred from using" the subject street *(Jakobson v Chestnut Hill Props.,* 106 Misc 2d 918, 927).

However, use or potential use by the public of a private

road will not, by virtue of that fact alone, transform a private road into a public street *(Impastato v Village of Catskill,* 55 AD2d 714, *affd* 43 NY2d 888). In addition to a finding of use by the public, "there must also be a finding that the road has been kept in repair or taken in charge, and thus adopted by the public authorities during the period in question [i.e., 10 years or more]" *(Jakobson v Chestnut Hill Props., supra,* at 926-927).

In the instant case the Zoning Board does not deny that: (1) the City of Long Beach issued building permits and certificates of occupancy for five private dwellings on Nappi Drive some 25 years ago, without raising General City Law § 36 as an objection or issuing variances; (2) the five houses receive city water and are attached to the city sewer system; (3) the city picks up garbage in front of the five houses; (4) the city provides police and fire service; (5) the city plows the street during the winter; (6) the city apparently cleans the street year round; and (7) the city pays for the electricity used by the street lights on Nappi Drive. As in *Jakobson v Chestnut Hill Props. (supra),* even though there has been no showing that the city engaged in regular repair or repaving of the roadway, the above-listed services constitute sufficient indicia of municipal control of Nappi Drive, for more than the statutory period, to establish that the street has become a public one by prescription.

After accepting the benefits of residing on a publicly maintained roadway for more than two decades, the current residents of Nappi Drive are estopped from asserting at this late date that their street is a mere private driveway.

In addition, we find that the determination of the administrative agency was not " 'supported by substantial evidence on the [whole] record' " *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179).

Although substantial evidence may be less than a preponderance of the evidence, it must be "[m]ore than seeming or imaginary," and must be "[m]arked by its substance—its solid nature and ability to inspire confidence"; it may not arise from "bare surmise, conjecture, speculation or rumor" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 180). "It is related to the charge or controversy and involves a weighing of the quality and quantity of the proof * * * it means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 180).

In the instant case there is no evidence whatsoever that ANB's proposed new structures pose any danger to the health and safety of the community. The proposed structures allegedly conform to B zoning regulations, which set higher standards than do the area's actual EE zoning requirements. And, despite some unsupported allegations, there is no evidence that the new edifices would be more difficult of access by emergency vehicles than any other structure on Nappi Drive, nor that they would pose a fire, traffic, or any other species of hazard to their neighbors. The fears expressed by the citizens at the hearing are nothing more than "bare surmise, conjecture, speculation or rumor" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 180).

Finally, General City Law § 36 (1) requires only that a proposed new building have reasonable access to a mapped street or highway, in order to provide adequate means of coping with fires and other emergencies *(Matter of Annandale, Inc. v Brienza,* 1 AD2d 785). Nappi Drive, a fully paved and improved road, provides such reasonable access to and from Neptune Boulevard, a dedicated public street.

In view of the foregoing determinations, we need not reach the other issues raised by ANB on this appeal. Mangano, J. P., Bracken, Spatt and Harwood, JJ., concur.